**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-CR-0166-CVE |
| | ) | |
| CODY JACOB WHEELER, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Now before the Court are defendant Cody Wheeler's motions to quash arrest and suppress evidence (Dkt. ## 11, 12). Defendant was charged by a grand jury with possession of a firearm after former felony conviction in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Dkt. # 2. Defendant argues that he was unlawfully detained in violation of his Fourth Amendment rights, and he asks the Court to suppress a firearm seized from his person and a statement he made about possessing the firearm. Defendant also requested an evidentiary hearing. Dkt. ## 11, 12. The government responds that the police officer had reasonable suspicion to believe defendant had committed or was committing criminal activity, and the investigatory detention of defendant was permissible under the Fourth Amendment. Dkt. # 13. The government also asserts that the officer's detention of defendant was permissible under the Fourth Amendment as an exercise of the officer's "community caretaker function." Id. The Court held a suppression hearing on December 3, 2015, at which the government offered the testimony of Wyandotte Police Officer Jared Robinson and offered an exhibit.

## I.

Shortly after 11:00 p.m. on October 1, 2015, Wyandotte Police Officer Jared Robinson responded to a call of a burglary-in-progress at 101 Beaver Place in Wyandotte, Oklahoma.  The caller reported hearing movement in the garage of the residence at 101 Beaver Place.  Officer Robinson responded to the scene in his police vehicle without lights and sirens, parked roughly three houses to the south of 101 Beaver Place, and approached the residence on foot.  He observed that the garage door at 101 Beaver Place was open.  The light inside the garage was not on, but outdoor lighting from the residence illuminated the interior of the garage.  Officer Robinson observed several boxes inside the garage but did not see a person.  Officer Robinson testified that although the garage was filled with several boxes, he was confident there was no place for a person to hide.  He further observed that 101 Beaver Place was situated very near the house immediately to the south and that the two houses appeared to share a common yard.

Officer Robinson observed two men standing behind the open driver's door of a white Ford F-350 pickup truck parked in the driveway of the house immediately to the south.  He approached the driveway without drawing his weapon, identified himself to the two men as a police officer and explained that he was responding to a call of a burglary-in-progress.  One man, later identified as Caleb Wheeler, immediately walked out from behind the truck to speak with Officer Robinson.  The other man, later identified as defendant Cody Wheeler, lingered behind the truck before finally coming out to meet Officer Robinson at Officer Robinson's request.  Officer Robinson observed that this man was acting strangely and was making furtive movements with his hands, drawing Officer Robinson's attention.  Officer Robinson observed that the defendant was moving his hands around his waist and pockets, which alerted Officer Robinson to the possibility that defendant had a weapon

2

of some kind.  Officer Robinson asked the men whether they had observed anyone in or around the house and/or garage of 101 Beaver Place.  Both men responded that they had not seen anyone. Defendant responded that the two men had been working on the truck in the driveway and the caller who reported the burglary in progress may have heard these noises.

Officer Robinson then asked both men to identify themselves.  Both men provided their names. Caleb Wheeler told officer Robinson that he resided in the house in front of which they were standing.  Officer Robinson asked both men to provide identification and both men complied. Officer Robinson confirmed the identities of the men as Caleb Wheeler and Cody Wheeler.  Officer Robinson also confirmed that Caleb Wheeler resided at 102 Beaver Place.  During the conversation, Officer Robinson observed defendant continue to act in a strange and nervous manner.  Defendant was pacing, constantly fidgeted, and continued making movements with his hands in the vicinity of his pockets.  Officer Robinson testified that, although many individuals display some level of nervousness during a police encounter, defendant's behavior exceeded the level of nervousness he believed to be normal.  In contrast, Caleb Wheeler exhibited a calm and collected demeanor.

Based on defendant's continued nervous demeanor, Officer Robinson contacted dispatch to check for outstanding warrants.  Dispatch informed Officer Robinson that defendant had an outstanding felony warrant from Ottawa County for knowingly concealing stolen property.  After receiving this information, Officer Robinson informed defendant he was under arrest for the felony warrant and instructed him to place his hands on his head.  Defendant complied and then, without prompting, stated "I have a handgun in my front pocket.  I don't want to get shot." Officer Robinson placed defendant in restraints and retrieved the handgun from defendant's front right pocket, which was a loaded Astra, Model 2000 Cub, .25 auto caliber pistol.   Officer Robinson questioned

3

defendant about the firearm and defendant responded affirmatively to both Officer Robinson's questions of whether the gun was loaded and whether defendant was a convicted felon.

Officer Robinson transported defendant to the Ottawa County jail where he was booked on several charges.  On November 2, 2015, a grand jury returned an indictment charging defendant with one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(c)(2).

## II.

Defendant argues that he was illegally detained with no reasonable suspicion that he was committing criminal activity and asserts that the firearm seized from his person and his statement about possessing a firearm should be suppressed.  The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures."  "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." Terry v. Ohio, 392 U.S. 1, 16 (1968).  "Reasonableness under the Fourth Amendment 'depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officer.'"  United States v. King, 990 F.2d 1552, 1559 (10th Cir. 1993) (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975)).  In balancing these interests, the Supreme Court has held that arrests, being the most intrusive of Fourth Amendment seizures, are reasonable only if supported by probable cause.  Novitsky v. City of Aurora, 491 F.3d 1244, 1253 (10th Cir. 2007); United States v. Davis, 94 F.3d 1465, 1468 (10th Cir. 1996).  Investigative detentions, which are Fourth Amendment seizures of limited scope and duration, are lawful if they are supported by a reasonable suspicion that the detained individual is engaged in criminal activity. Novitsky, 491 F.3d at 1253.  The investigative detention must be "justified at its inception and

4

reasonably limited in scope."  United States v. Rice, 483 F.3d 1079, 1082 (10th Cir. 2007).  The

Tenth Circuit has made a clear distinction between the level of suspicion needed to initiate an arrest

and an investigative detention:

> While an investigative detention is a seizure within the meaning of the Fourth
> Amendment, it need not be supported by probable cause.  An investigative detention
> is justified where specific and articulable facts and rational inferences from those
> facts give rise to reasonable suspicion that a person has committed or is committing
> a crime.

United States v. Walraven, 892 F.2d 972, 975 (10th Cir. 1989) (quoting United States v. Espinoza,

782 F.2d 888, 890 (10th Cir. 1986)).

Defendant argues that he should be considered as seized or detained from the moment

Officer Robinson requested that defendant come out from behind the pickup truck.  However, the

Court finds that Officer Robinson did not take any action to detain defendant at this point in the

encounter.  The evidence demonstrates that it was instead a consensual encounter, which does not

require reasonable suspicion.  See United States v. Drayton, 536 U.S. 194, 201 (2002).  "A person

is seized for Fourth Amendment purposes when, considering all of the circumstances, the police

conduct 'would have communicated to a reasonable person that the person was not free to decline

the officers' requests or otherwise terminate the encounter.'"  United States v. Rodriguez, 739 F.3d

481, 486 (10th Cir. 2013).  In this case, the encounter began when Officer Robinson approached the

two men and identified himself as a police officer.  The Court finds that what followed was a

consensual encounter, as Officer Robinson asked both men general questions about the nature of the

burglary-in-progress call to which he was responding.  A "seizure does not occur simply because

a police officer approaches an individual and asks a few questions."  Florida v. Bostick, 501 U.S.

429, 434 (2002).  And, "even when officers have no basis for suspecting a particular individual, they

may generally ask questions of that individual . . . as long as the police do not convey a message that compliance with their requests is required." Id. at 425. "'While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response.'" Drayton, 536 U.S. at 205 (quoting INS v. Delgado, 466 U.S. 210, 216 (1984)).

"[T]o determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." Bostick, 501 U.S. at 439. Several factors are relevant to determining whether a person was free to end an encounter with officers, including:

> [T]he location of the encounter, particularly whether the defendant is in an open public place where he is within the view of person other than law enforcement officers; whether the officers touch or physically restrain the defendant; whether the officers are uniformed or in plain clothes; whether their weapons are displayed; the number, demeanor and tone of voice of the officers; whether and for how long the officers retain the defendant's personal effects such as tickets or identification; and whether or not they have specifically advised defendant at any time that he had the right to terminate the encounter or refuse consent.

United States v. Lopez, 443 F.3d 1280, 1284 (10th Cir. 2006) (quoting United States v. Spence, 397 F.3d 1280, 1283 (10th Cir. 2006)). The Court finds that defendant's initial encounter with Officer Robinson was consensual and did not amount to a seizure.[1] Although Officer Robinson was in uniform and had his service weapon on his person, he arrived at the scene without lights or sirens, he approached the men on foot, and did not draw his weapon. Officer Robinson was simply seeking

---

[1]      Although defendant has not challenged Officer Robinson's credibility, the Court finds that Officer Robinson's testimony is credible. The Court makes this finding based upon the observation of the officer's behavior, including his demeanor, during his testimony at the suppression hearing.

information from the two men who were in the driveway next door to the home that was the subject

of the burglary-in-progress call and where he had observed an open garage door.  Further, Officer

Robinson was the only officer present, he did not restrain either man or make physical contact, there

is no evidence that he retained both men's identifications longer than necessary to verify their

identities and perform a warrants check, and he exhibited a calm demeanor and conversational tone

when he asked both men his initial questions about whether they had observed anything in relation

to the burglary-in-progress call.  Although Officer Robinson did not explicitly advise the men of

their right to terminate the encounter or refuse consent, he gave no indication that his requests must

be complied with or that the two men would not be free to terminate the encounter.  It was not until

the officer contacted dispatch to run a warrants check after observing defendant's unusual behavior

that the encounter ceased being consensual and became an investigative detention.  For Fourth

Amendment purposes, the issue in this case is whether Officer Robinson had reasonable suspicion

to conduct an investigative detention of defendant.[2]

    "Reasonable suspicion arises when 'an officer of reasonable caution' has a 'particularized

and objective basis for suspecting the person stopped of criminal activity' judged against the totality

of the circumstances."  United States v. Pena-Montes, 589 F.3d 1048, 1052 (10th Cir. 2009).  The

---

[2]      The government also relies on the "community caretaker function" as an alternative basis
for finding that Officer Robinson's detention of defendant was permissible under the Fourth
Amendment.  "Law enforcement officers are not only permitted, but expected, to exercise
what the Supreme Court has termed 'community care taking functions, totally divorced from
the detection, investigation, or acquisition of evidence' relating to a crime.  A brief, non-
investigatory detention is permissible when articulable facts indicate the need to assure the
safety of the public or individual being detained."  United States v. Luginbyhl, 321 F. App'x
780, 783 (10th Cir. 2009) (unpublished).  Here, no facts exist to support the argument that
Officer Robinson's detention of defendant was to "assure the safety of the public,"
particularly given that the encounter occurred late at night, in a rural area, and defendant and
his brother were the only two individuals Officer Robinson observed on the street.

Court finds that, based on the totality of the circumstances, Officer Robinson had reasonable suspicion that criminal activity was afoot. Officer Robinson was responding to a call of a burglary in progress, late at night and in a rural area, and observed two men standing in the driveway immediately adjacent to the residence that was the subject of the call. This, combined with defendant's behavior, which included his reluctance to come meet the officer, his furtive hand movements in the vicinity of his pockets, his pacing, and his inability to stand still, provided Officer Robinson with reasonable suspicion that criminal activity was afoot. Defendant's behavior is of particular importance when considered in contrast to Caleb Wheeler, who remained calm and composed throughout the entire encounter with Officer Robinson. Considering the articulable facts and drawing reasonable inferences, the Court concludes that Officer Robinson had reasonable suspicion to conduct an investigatory detention of defendant. This investigative detention revealed the presence of an outstanding warrant for defendant's arrest, which provided Officer Robinson with probable cause to arrest defendant.

Defendant further argues that the firearm and his statement that he possessed a firearm should be suppressed because they stemmed from an unlawful detention and are thus fruit of the poisonous tree. See Wong Sun v. United States, 371 U.S. 471, 488 (1963). Officer Robinson had reasonable suspicion to conduct an investigatory detention and had probable cause to arrest defendant. As such, defendant's detention was lawful. Further, the Fifth Amendment does not bar the admission of statements which a person freely gives. See United States v. Muniz, 1 F.3d 1018, 1022 (10th Cir. 1993). The Fifth Amendment provides a person protection against interrogation while in custody, but does not extend to spontaneously uttered statements. Martinez v. Sullivan, 881 F.2d 921, 928 (10th Cir. 1989). Here, defendant's statement, "I have a handgun in my front pocket.

8

I don't want to get shot," was spontaneously and voluntarily uttered by defendant after Officer Robinson told him to put his hands on his head. It was not in response to any questioning or elicited in any way from Officer Robinson. Because Officer Robinson lawfully detained defendant and because the Fifth Amendment does not protect spontaneous utterances, both the firearm and defendant's statement should not be suppressed.

**IT IS THEREFORE ORDERED** that defendant's motions to quash arrest and suppress evidence (Dkt. ## 11, 12) are **denied.**

**DATED** this 3rd day of December, 2015.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE